UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cr-00153-SEB-TAB |
| | ) | |
| DUSTIN MURRY, | ) -05 | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motions for Compassionate Release**

Pending before the Court are Dustin Murry's motions for compassionate release, dkts. [245], [251], filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 51954, 5239. Mr. Murry seeks immediate release and the reduction of his sentence to time served so that he can care for his minor son. Alternatively, he asks the Court to reduce his sentence to time served and release him to supervised release with home confinement as a condition of supervised release. For the reasons explained below, Mr. Murry's motion is **GRANTED**.

**I.
BACKGROUND**

**A.     Procedural History**

In February 2017, the Court sentenced Defendant Dustin Murry to a total of 100 months of imprisonment after he pled guilty to one count of possession with intent to distribute controlled substances (28 grams or more of cocaine base), in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Dkts. 198, 205. The 100-month sentence represented a 40-month term of

imprisonment for the drug charge and a consecutive 60-month term of imprisonment for the firearm charge. Dkt. 205. The Court also imposed 3 years of supervised release. *Id.*

Mr. Murry has been incarcerated for more than five-and-a-half years. He is now incarcerated at FCI Gilmer in Glenville, West Virginia. His anticipated release date (with good-conduct time) is October 5, 2022. Thus, with good-conduct time included, he has served more than three-quarters of his sentence. He will be eligible for home confinement in April 2022, just over a year from now. Dkt. 259-5 at 2. He is currently 34 years old.

Mr. Murry had one conduct write-up in 2019, dkt. 264-4, but has been mostly productive at the BOP, completing classes in personal financial management and Spanish, *see* dkt. 259-13. He represents, without contradiction from the United States, that he has been unable to complete drug treatment in the BOP despite efforts to do so. Dkt. 259 at 16, 21. Nonetheless, he represents that he has overcome his addiction problems and is committed to remaining sober after release. *Id.* at 16.

Mr. Murry filed a pro se motion for compassionate release on June 11, 2020. Dkt. 245. At the Court's direction, he supplemented his motion on September 29, 2020. Dkt. 251. The Court appointed counsel to represent Mr. Murry, dkt. 252, and appointed counsel filed a memorandum in support of his motion on January 26, 2021, dkt. 259. The United States responded on February 18, 2021, dkt. 264, and Mr. Murry replied on February 25, 2021, dkt. 265.

**B.       Facts Related to Mr. Murry's Need to Care for his Minor Son**

Mr. Murry has an 11-year-old son, A.C. Before Mr. Murry's arrest in 2015, he was involved in A.C.'s life and was described as having "excellent relationships" with A.C. and his other children. *See* dkt. 259-6; dkt. 259-10; dkt. 199 at 16. After Mr. Murry was arrested, A.C. went to

live with his mother, B.C.[1] *See* dkt. 259-2. In 2017, the Department of Child Services ("DCS") deemed A.C. to be a Child in Need of Services ("CHINS") and removed A.C. and his half-siblings from B.C.'s care due to neglect and abuse. *Id.*; dkt. 259-3. The DCS report was filed after B.C.'s boyfriend was seen choking B.C. in the front yard of their while the children (including A.C.) watched. Dkt. 259-2. Since then, A.C. has not been returned to B.C.'s care, and B.C.'s mother reports that B.C. is not motivated to take A.C. back into her care. Dkt. 259-6 at 2.

After A.C. was removed from B.C.'s care, he and his half-siblings went to live with B.C.'s mother, S.B. ("Maternal Grandmother"). Dkt. 259-6. B.C. also sometimes watched the children. Dkt. 259-9. The CHINS case was resolved in August 2019, when Maternal Grandmother gained third-party custody of A.C. Dkt. 259 at 4. Just about one month later, A.C. was again deemed to be an alleged CHINS when he experienced significant behavioral problems while in Maternal Grandmother's care. Dkt. 259-3. Among other things, B.C. and Maternal Grandmother reported that A.C.—who was 9 years old at the time—had repeatedly sexually violated his 5-year-old half-brother. *Id*. B.C. claimed that A.C. had been acting out sexually since he was 7 years old and that he was addicted to pornography. *Id*. A.C. has consistently denied engaging in appropriate touching. Dkt. 259 at 4. Nonetheless, he was admitted to Damar Services for residential treatment from December 2019 to April 2020. Dkt. 259-7. While at Damar, A.C. was diagnosed with Attention Deficit Hyperactivity Disorder and Disruptive Mood Dysregulation Disorder. Dkt. 259-7. Therapists determined that A.C. "would benefit from working with a male mentor by supporting healthy male roles and attitudes and engaging him in age-appropriate, prosocial activities." *Id*.

When A.C. was released from Damar, he went to live with Mr. Murry's mother, C.S. ("Paternal Grandmother"). Dkt. 259 at 4; dkt. 259-10. Paternal Grandmother reported that A.C.

---

[1] Given the sensitive nature of the facts discussed in this Entry, the Court uses only initials for the various people involved in A.C.'s life.

had no behavioral problems in her care, but she was unable to care independently for A.C., so he returned to live with Maternal Grandmother. Dkt. 259-8; dkt. 259-10. This was problematic because A.C.'s half-brother (the child A.C. allegedly assaulted) also lived with Maternal Grandmother. Dkt. 259-8. After A.C. returned to live with Maternal Grandmother, DCS reported to the court in the CHINS proceeding that Maternal Grandmother had failed to provide the children in her care with a "safe, stable, and appropriate living environment free from sexual abuse and with necessary supervision and services." Dkt. 259-9. DCS also reported that B.C. had failed to supervise the children as required to protect A.C.'s half-brother from further victimization. *Id.* The most recent hearing in A.C.'s CHINS case was on January 4, 2021. Dkt. 259-4. The court concluded that "the circumstances which caused the children's removal had only been partially alleviated." *Id*.

Currently, A.C. goes back and forth between the homes of Maternal Grandmother and Paternal Grandmother. Dkt. 259-6; dkt. 259-10. Although Maternal Grandmother is technically his guardian, she typically cares for him only three days per week. Dkt. 259-10. In a letter to the Court, Maternal Grandmother reports that it is difficult for her to care for A.C. and his half-siblings and that she struggles financially. Dkt. 259-6. For her part, Paternal Grandmother reports that she cannot care for A.C. full-time because she works and goes to school. Dkt. 259-10. She also reports that A.C. often lacks supervision when he stays with Maternal Grandmother; for example, when she picks A.C. up, there is often no adult there and A.C. is left in the care of his older half-brother. *Id.*

As things currently stand, A.C.'s CHINS matter has been open for approximately a year-and-a-half, and permanent plans for his care still have not been determined. Dkt. 259-4. Mr. Murry's counsel represents that Mr. Murry's attorney in the CHINS case and counsel for DCS

report that this is an abnormally long time for a CHINS case to remain active without a permanent guardian being established. Dkt. 265 at 1. Because he is incarcerated, Mr. Murry has been unable to participate in court-mandated services in connection with the CHINS matter. The next permanency hearing is scheduled for June 7, 2021, and the parties have been ordered to participate in a permanency facilitation meeting on May 5, 2021. Dkt. 259-4 at 5. Mr. Murry is in danger of having his parental rights terminated if he is not released from incarceration soon. Dkt. 265 at 4–5. If he is released, he plans to live with A.C. and his mother (Paternal Grandmother) to start. Dkt. 259 at 2. After he saves up enough money, he plans to get an apartment for he and A.C. to live in. *Id.* at 13.

## II. Discussion

Mr. Murry argues that the Court should order his immediate release because he needs to care for A.C. and that need is an extraordinary and compelling reason for release. Dkt. 259. In addition, he argues that he would not be a danger to the community if released and that the sentencing factors in 18 U.S.C. § 3553(a) favor release. *Id.* In response, the United States argues Mr. Murry has not shown an extraordinary and compelling reason for release because Maternal Grandmother is not dead or physically incapacitated, and, thus, is capable of caring for A.C. Dkt. 264. The United States also argues that Mr. Murry would be a danger to the community if released and that any reduction in Mr. Murry's sentence would be inconsistent with the § 3553(a) factors. *Id*.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director

of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[2] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before

---

[2] The United States concedes that Mr. Murry has exhausted his administrative remedies. Dkt. 248.

passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . ."). It has not been updated since the First Step Act

amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

### A. Extraordinary and Compelling Reasons

Mr. Murry argues that "A.C.'s need for a reliable and loving caretaker, a stable home, and a supportive role model constituted extraordinary and compelling reasons for Mr. Murry's compassionate release." Dkt. 259 at 2. The Court agrees that the particular facts of this case present extraordinary and compelling reasons warranting a sentence reduction within the meaning of § 3582(c)(1)(A)(i).[3]

---

[3] Mr. Murry made an administrative request for relief to his warden, but the record reflects that the warden never responded or ever took a position as to whether extraordinary and compelling reasons exist

As the Court's summary of the facts makes clear, A.C. is in urgent need of a permanent, stable home. He is currently bouncing back and forth between his two grandmothers' homes. Paternal Grandmother represents that she cannot care for him independently. Maternal Grandmother has made it clear that even the part-time care she provides is a strain, and the record also suggests that Maternal Grandmother's home may not be the best environment for A.C. B.C. is not currently interested in regaining custody of him and, in any event, has been deemed by the state court not to be an appropriate caregiver. By way of contrast, Mr. Murry stands ready and willing to provide a permanent, stable home for A.C. Moreover, he may lose his parental rights if he is not released from incarceration soon. Taken together, these facts present an extraordinary and compelling reason for release. *Cf. United States v. Chaffin*, No. 3:13-cr-32-RLY-CMM-1, dkt. 232 (S.D. Ind. Oct. 6, 2020) (United States conceded extraordinary and compelling reasons where child had been removed from mother's care, grandfather could no longer care for him, and defendant would lose parental rights if not released from prison soon); *United States v. Bastain*, No. 3:13-cr-20-RLY-CMM-3, dkt. 550 (S.D. Ind. Jan. 6, 2021) (finding extraordinary and compelling reasons where mother's parental rights were terminated and grandmother adopted child, but suffered from a range of medical conditions that made it extremely difficult for her to care for defendant's disabled minor son, even if she was not technically "incapacitated"); *United States v. Barnes*, No. 3:17-cr-11-RLY-MPB-4, dkt. 186 (S.D. Ind. Jan. 29, 2021) (finding extraordinary and compelling reasons where grandparents were physically unable to care for defendant's disabled adult child and rejecting United States' argument that defendant's sister or adult daughters care for the child, noting that sister had not indicated the willingness to care for child and the daughters were young adults and still in school).

---

in this case. Dkt. 259 at 9. As a result, there is no opinion from the BOP to which the Court must give weight.

The United States resists this conclusion, arguing that Mr. Murry has not shown extraordinary and compelling reasons for release under Subsection (C) of Application Note 1 to U.S.S.G. § 1B1.13 because Maternal Grandmother is not dead or incapacitated, "is available to care for [A.C.], and will in fact do so." Dkt. 264 at 8. The United States notes that Maternal Grandmother may soon be dissolving her guardianship of one of the children in her care—A.C.'s half-brother (the child that A.C. allegedly assaulted)—and asserts that this would "lighten her load." *Id.* at 9. In summary, the United States contends that, "while far from ideal, it appears that [A.C.] is currently in a stable, loving home with a family member, and he is receiving treatment for his behavioral issues." *Id.*

In the Court's view, the United States takes an unnecessarily narrow view of the meaning of "incapacitated" in Subsection (C). Regardless, under *Gunn*, the Court is not bound by the letter of Subsection (C) and may exercise its discretion to find extraordinary and compelling reasons warranting a sentence reduction even where Subsection (C) does not literally apply. It does so here. The United States' portrayal of A.C.'s current living situation ignores the fact that he is currently going back and forth between his grandmothers. And, while Maternal Grandmother has not expressly stated that she can no longer provide any care for A.C., she also has not indicated a willingness to take on full-time care of A.C., which is apparently what the United States envisions. In short, none of the alternative caregivers—Maternal Grandmother, Paternal Grandmother, and A.C.'s mother—are available and willing to provide what he needs: a permanent, stable home.

Under these circumstances, the Court will exercise its discretion to find that Mr. Murry has presented extraordinary and compelling reasons warranting a sentence reduction. *See Gunn*, 980 F.3d at 1180–81. A.C. faces a combination of challenges and his welfare depends on having a permanent, stable caregiver available. Accordingly, the Court concludes that Mr. Murry has

10

presented an extraordinary and compelling reason warranting a sentence reduction as set forth in § 3582(c)(1)(A)(i).

### B. Danger to any Other Person or the Community

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the court must consider in determining whether a defendant should be detained pending trial. These same factors guide the court's release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Murry's conviction was based on the following conduct. Mr. Murry routinely obtained small amounts of heroin from a codefendant, which he then distributed to other individuals. Dkt. 129 at 6. On May 13, 2015, law enforcement executed a search warrant at Mr. Murry's residence,

where he lived with his girlfriend and their young son (not A.C.). *Id.*; dkt. 144 at 16. During the search, officers seized 28.3 grams of cocaine base; 162 tablets of oxycodone; 0.7 grams of a mixture of heroin, fentanyl, and monacetyl morphine; 9.9 grams of heroin; and 17 grams of powder cocaine. Dkt. 129 at 6. Officers also found a loaded Smith and Wesson 9-millimeter firearm, as well as $2,400 in cash. *Id.*

Mr. Murry's adult criminal history includes misdemeanor convictions for battery and unauthorized leave from home detention and felony convictions for dealing in a narcotic and operating a vehicle as a habitual traffic violator. Dkt. 199 at 9–12. He has violated probation on at least one occasion and was on probation when he committed the crimes in this case. *Id.* Mr. Murry also has a lengthy history of substance abuse. *Id.* at 18–19. He was disciplined for possessing suboxone in 2019, dkt. 264-4, but he maintains that the substance belonged to his cellmate and that he never used it, dkt. 265 at 9. For reasons not disclosed by the record, the BOP considers Mr. Murry to be a high recidivism risk and has assigned him a medium security classification. Dkt. 264-3.

The Court is concerned about Mr. Murry's criminal history and history of drug addiction. The Court finds, however, that Mr. Murry's release from incarceration to his 3-year term of supervised release with additional conditions would not threaten the safety of any person or the general public. Mr. Murry has been largely discipline-free in his more than 5 years of incarceration. He was the fifth defendant in a 6-defendant conspiracy, indicating that he was not a leader of the drug trafficking ring. He represents that he has overcome his substance abuse problems and is committed to maintaining sobriety. Prior to his incarceration, he was—by all accounts—an excellent father. Mr. Murry maintained employment as a forklift operator from January 2014 to May 2015, indicating that he is employable and capable of holding down a full-time job. Dkt. 199

at 19. If he is released, he plans to work at a family member's restaurant. Dkt. 259 at 13. His mother has submitted a letter of support. Dkt. 259-10.

With respect to the additional conditions the Court finds necessary, the Court observes two major challenges that Mr. Murry faces upon his release. First, he has a history of drug abuse. Second, he may become the primary caretaker of a child with a history of abuse and significant behavioral challenges. Accordingly, in addition to the substance abuse program and the drug testing previously imposed in the Court's judgment, *see* dkt. 205 at 3–4, the Court further orders Mr. Murry to participate in family counseling at the direction of his probation officer so that he can gain the necessary skills to be a single parent to a child who faces significant challenges.[4]

Accordingly, pursuant to § 3142(g), the court finds that Mr. Murry does not pose a danger to any person or the community if his sentence is reduced to time served and his term of supervised release includes the conditions discussed above.

C.   *Section 3553(a) Factors*

Finally, the United States argues that the § 3553(a) factors do not favor early release because Mr. Murry trafficked drugs and has a criminal record. Dkt. 264 at 10–12. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>> **(2)** the need for the sentence imposed—
>>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> **(B)** to afford adequate deterrence to criminal conduct;
>>> **(C)** to protect the public from further crimes of the defendant; and

---

[4] The Court recommends that Mr. Murry participate in the Court's Re-Entry and Community Help ("REACH") Program if space permits, which should assist Mr. Murry in his transition from incarceration back into the community.

> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence[s] and the sentencing range established for--
>
> > **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The nature of Mr. Murry's offenses was undoubtedly serious, and—as discussed above—his criminal history is concerning. But Mr. Murry was sentenced to 100 months of imprisonment and (with good-conduct time included) has served more than three-quarters of that sentence. The more than 5 years he has been incarcerated represent a significant sanction. The Court believes the 100-month sentence was appropriate when imposed. Circumstances have, however, changed. Currently, A.C. stands in urgent need of a stable, permanent caregiver. As A.C.'s sole provider, Mr. Murry will have both the legal duty and the moral imperative to care for A.C. rather than engage in criminal activity. He also has a viable release plan, which includes employment at a family restaurant and support from his mother. Therefore, further incarceration is not needed to deter Mr. Murry from further offense; nor, for the reasons described above, is it necessary to protect the public from future crimes.

In addition to the more than 5 years he has already served, Mr. Murry will serve an additional 3 years on supervised release. The sentence that has already been served plus the 3-year term of supervised release appropriately recognizes the seriousness of Mr. Murry's conduct and will serve as adequate deterrence to future criminal conduct.

As mentioned above, Mr. Murry is currently unable to participate in services in connection with A.C.'s CHINS matter. As a result, he may risk having his parental rights terminated. If released, however, Mr. Murry will have more access to services that will enable him to be a good father and productive citizen. As the Court described above, Mr. Murry will be required to participate in drug and family counseling upon his release.

Finally, the Court notes that, even if the Court does not release him now, Mr. Murry will be eligible for home confinement in just over a year. Under the circumstances, further incarceration would be greater than necessary to provide just punishment for his offense and will not create a sentencing disparity.

When combined with Mr. Murry's need to care for A.C., the court finds that the § 3553(a) factors weigh in favor of reducing Mr. Murry's sentence to time served with additional conditions for his term of supervised release. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

## IV.
## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Murry's sentence and his immediate release from imprisonment, that Mr. Murry does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Murry's motions for compassionate release, dkts. [245], [251], **ORDERS** that Mr.

Murry's sentence of imprisonment be reduced to **time served as of March 8, 2021,** and further **ORDERS** the BOP to release Mr. Murry by **4:00 p.m. on March 8, 2021.**

No later than **12:00 p.m.** on **March 3, 2021, counsel for the United States** is **ordered** to do the following: (1) transmit the AO248 Order to Mr. Murry's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 has occurred.

The terms of supervised release imposed in the Judgment of February 17, 2017, remain the same with the addition of the following conditions:

Mr. Murry is required to participate in family counseling at the direction of his probation officer; and

Mr. Murry is further required to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

**IT IS SO ORDERED**.

Date:  3/2/2021

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel